## Breining, Appellant, *v.* Born.

*Will—Probate—Issue devisavit vel non—Undue influence.* .

On an issue devisavit vel non the case should not be submitted to the jury where no evidence is offered of any direct influence upon the testator by any one, or of any solicitation in regard to the will, and the only evidence offered to support the charge of undue influence is that some of the beneficiaries who resided with the testator drove one of the contestants, a son, from the testator's house on account of drunkenness, and talked against the father of another of the contestants, a grandson, because he had treated with disrespect his wife, who was testator's daughter, and that two of the daughters who kept house for the testator had great influence over him.

Argued Oct. 20, 1910. Appeal, No. 66, Oct. T., 1910, by plaintiffs, from judgment of C. P. No. 2, Allegheny Co., July T., 1909, No. 423, for defendants non obstante veredicto in case of Christian F. Breining and Walter E. Sulzer v. Louisa Born et al. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Issue devisavit vel non.

At the trial the jury returned a verdict for the plaintiffs. Subsequently on motion the court entered judgment for defendant non obstante veredicto, SHAFER, J., filing the following opinion:

The trial was on a precept from the orphans' court directing the trial of the question whether a certain paper dated November 7, 1908, and admitted to probate by the register as the last will of Christian Breining, deceased, was procured by undue influence, fraud or duress, upon which a verdict was rendered against the will.

The motion for a new trial, filed by the defendants, we understand to be withdrawn, but it is claimed by them that the evidence for the plaintiff was not sufficient to authorize a verdict against the will, and they have therefore moved for judgment non obstante veredicto.

The evidence shows that Christian Breining had been

for many years in business as a butcher in the Allegheny market, with a shop at his house on Chestnut street in the city of Allegheny, and that he had acquired property, real and personal, which amounted to something like $140,000 at the time of his death. He had reared a family of three sons and five or more daughters, all of the daughters but one being married and all living away from his house except one, some of them being in other states. His wife, who took a large part in the conduct of the business, died several years before him, and his eldest daughter, Mrs. Sulzer, died about a year before his death, leaving her husband and one son about twenty-five years of age, who is one of the contestants of the will. None of his sons were married and all of them lived at home and worked with him until after his wife died, when the family living at his house consisted of his daughter, Mrs. Landis, and her husband, his unmarried daughter Sophia and his three sons. His two sons, Christian and Edward, were much addicted to drink, and the sisters living at home drove Chris away from the house for that reason some years before the father's death, the old man appearing to take no part one way or the other in the matter. Edward, a considerable time afterwards, left the house under similar circumstances, so that at the death of the testator the family consisted of Mrs. Landis and her husband, his daughter Sophia, and his son Henry who carried on the business for some three years before his father's death, the old man having retired from business. The testator was about seventy-six years of age at the time of his death, and appears to have been in the full possession of his faculties, although he was gradually declining in health after the death of his wife and his retirement from business. He was very much attached to his daughter, Mrs. Sulzer, who lived in the neighborhood, where her husband had a gents' furnishing store, and was accustomed to visit her nearly every day after the death of his wife up to her own death, which took place on Thanksgiving Day, 1907. He was also quite friendly to her son, Walter Sulzer, but

does not seem to have been particularly friendly with his daughter's husband, who from the evidence appears not to have been in his house for twenty years before that time. When Mrs. Sulzer fell ill of the disease of which she died there was complaint by Mrs. Landis and Sophia and Henry that they had not been informed of her sickness, but found it out accidentally, and they had complained to the old man about this neglect, and when Mrs. Sulzer died and the funeral was held on Saturday morning, the second day after her death, they complained that Sulzer had not acted with due respect to his wife in starting the funeral very early in the morning, and as they said, before the clergyman arrived at the house, and especially of the fact that he opened up his store for business at one o'clock on the same afternoon, immediately after the funeral, having the day before directed his clerks to be present for duty at that time. They complained bitterly to the old man of this as especially disrespectful to their sister, and the old man appears to have agreed with them and to have spoken of this frequently, and as a matter of fact he never returned to Sulzer's place of business, which was near his house, after the afternoon of the day on which his daughter was buried, nor does it appear that he ever spoke to either Walter Sulzer or the father thereafter.

About a year before his death he caused a will to be drawn up, which was offered in evidence by the contestants, in which he gave to Walter Sulzer $1,000, to Henry and Sophia, one of his houses; to Mrs. Landis, another; to his daughter Louisa, the slaughterhouse and ground, and the rest to be shared equally between seven of his children, including Christian and Edward, the shares of Christian and Edward to be held in trust by Henry and Sophia for ten years, or as much longer as they should think proper, or until they should prove themselves fit and capable to take care of themselves, and in the meantime they were to receive the revenue. This will was never executed by him, but he declared that he lost it. Some days before his death he sent his son Henry to the Dollar

Savings & Trust Company to have Mr. Baldinger, an officer of that company, whom he had known all his life, come to write a will for him. Mr. Baldinger thereupon went to the testator's house, taking with him the trust officer of the company, Mr. Cunningham, who was a member of the bar and not acquainted with the testator. He there in the presence of these two gentlemen only, having previously closed the doors, told them that he wanted a will made and how he wanted it made, and Mr. Cunningham took notes of the items of the will, and Mr. Baldinger made one or two suggestions as to the manner of arriving at the division he wished to make and as to the appointment of executors. The testator was not able to remember the names of his married daughters, that is the names of their husbands, at least not sufficiently to tell Mr. Cunningham how to put them in the will, and said he would have Henry tell them the names, which Henry afterwards came to the bank and did. The will was thereupon drawn up and brought by Mr. Baldinger to the house, where it was executed and witnessed by Mr. Baldinger and a neighbor who was called in. This will reduced the share of Walter Sulzer from $1,000 to $5.00, and gave Christian $1,000 subject to a trust as before, and gave Edward $5,000, in the same manner.

There was no evidence of any direct influence upon the testator by any one, or of any solicitation in regard to the will. It is claimed, however, that undue influence exercised by Mrs. Landis and Sophia and Henry, or some of them, is to be inferred from their talking to the old man against the Sulzers as above stated, from their driving Chris and afterwards Edward away from the common home without apparently consulting the testator, and that from the evidence that Mrs. Landis and Sophia had great influence over the man and managed the house, and that he sometimes referred to his daughter, Mrs. Landis, as the "gendarme," and other similar matters, and that this undue influence caused the discrimination to be made between the children, as shown by the will.

We are clearly of opinion that the evidence was not sufficient to show any undue influence exercised on the testator, but that the provisions of the will are fully explained by the conduct of the sons and his ceasing to associate with the Sulzers for the reasons above stated, or other reasons. There was some evidence that the testator drank to some extent, but it does not appear that it had affected his mind in any way, or that he drank more than, or as much as, the average of his neighbors in the quarter in which he lived. The fact that he could not tell the scrivener the full names of his married daughters, although he remembered their Christian names, does not indicate any great lack of memory, as they did not live near him and their names, except one, are English and not German. There is nothing to show that the will was not the free and voluntary act of the testator, although it may be that he was influenced by the talk of the children with whom he lived, against the two sons who did not live at home and Walter Sulzer, but there is nothing to show that these criticisms were not honest or that they were unfounded, and the influence exercised on the testator by them was in no sense "undue" influence.

Being of opinion, therefore, that the evidence was not sufficient to go to the jury to show that the will in question was procured by undue influence, fraud or duress, inducing and compelling the testator to execute it, it is ordered that judgment be entered for the defendants non obstante veredicto.

Plaintiffs appealed.

*Error assigned* was in entering judgment for defendants non obstante veredicto.

*R. B. Petty*, with him *Wm. F. Petty* and *Robert B. Petty, Jr.*, for appellants.

*John D. Brown*, with him *Lawrence P. Monahan*, for appellees.

PER CURIAM, January 3, 1911:

Our examination of the testimony taken at the trial has not led us to doubt the correctness of the conclusion reached by the learned trial judge and we affirm the judgment on his opinion entering judgment for the defendants non obstante veredicto.